**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re:<br><br>Hampton Lake, LLC,<br><br>Debtor. | Case No. 13-02482-jw<br><br>Chapter 11 |

**ORDER: (1) AUTHORIZING DEBTOR'S ASSUMPTION OF EXECUTORY SALES CONTRACTS; (2) AUTHORIZING THE SALE OF CERTAIN ASSETS OF THE DEBTOR FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS PURSUANT TO 11 U.S.C. § 363; AND (3) SCHEDULING A FINAL HEARING TO DETERMINE HOW NET SALES PROCEEDS ARE DISTRIBUTED**

The relief set forth on the following pages, for a total of 9 pages including this page, is hereby ORDERED.

---

**FILED BY THE COURT**
**05/10/2013**



*[signature: John E. Waites]*
US Bankruptcy Judge
District of South Carolina

Entered: 05/10/2013

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re:<br><br>Hampton Lake, LLC,<br><br>Debtor. | Case No. 13-02482-jw<br><br>Chapter 11 |

**ORDER: (1) AUTHORIZING DEBTOR'S ASSUMPTION OF EXECUTORY SALES CONTRACTS; (2) AUTHORIZING THE SALE OF CERTAIN ASSETS OF THE DEBTOR FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS PURSUANT TO 11 U.S.C. § 363; AND (3) SCHEDULING A FINAL HEARING TO DETERMINE HOW NET SALES PROCEEDS ARE DISTRIBUTED**

THIS MATTER came before the Court on the Debtor's motion (the "Motion") for the entry of an order: (A) authorizing the Debtor's assumption of seven (7) executory sales contracts pursuant to 11 U.S.C. § 365; and (B) authorizing the sale of seven (7) real property lots (the "Subject Lots") to various purchasers pursuant to the various contracts for sale and the schedule attached hereto and to the Motion as **Exhibit A** with such sales being free and clear of all liens, claims, encumbrances, and other interests, pursuant to 11 U.S.C. §§ 105 and 363(f). The Motion appear to have been served by counsel as set forth in the Certificate of Service filed by counsel pursuant to the Court's Order and Notice of Emergency Hearing in this matter.

It appearing that the Motion was properly served, after the arguments and testimony presented at the hearing in this matter, the Court makes the following findings of fact and conclusions of law:[1]

**FINDINGS OF FACT**

**Background and Jurisdiction**

1. The Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on April 29, 2013. The Debtor is operating its business and managing its assets as a debtor in possession pursuant to §§1107(a) and 1108 of the Bankruptcy Code.

---

[1] The Court notes that, to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

2

2. Debtor is in the real estate development industry. The Debtor has approximately 235+/- lots in Hampton Lake Subdivision in Bluffton, South Carolina, and owns and operates other subdivision common property, including a lakehouse, boathouse, spa and fitness center, and a 165-acre freshwater lake. The Debtor's primary business is the operation of the subdivision and the development and sale of residential lots within the subdivision. There are approximately 650 homeowners currently living at the Debtor's development. The Debtor has seven (7) employees.

3. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Motion is a "core" proceeding within the purview of 28 U.S.C. § 157(b). Venue of this case is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4. Crimson Portfolio, LLC, through its authorized agent Sabal Financial ("Sabal"), asserts a claim in the approximate amount of $19,429,484.26 and further asserts a first priority mortgage on all of the Debtor's real property holdings and a security interest in the Debtor's personal property of the Debtor.

5. Hampton Lake Funding, LLC ("HL Funding"), an affiliate of the Debtor, asserts a $2,290,800.35 claim and second priority mortgage on all of the Debtor's real property holdings, including the Subject lots. Upon information and belief, HL Funding consents to the Debtor's proposed sale of the Subject Lots.

## PROPOSED ASSUMPTION AND SALES

6. The Debtor has contracts of sale on the Subject Lots with various purchasers as shown on the attached **Exhibit A**. The Debtor seeks authority to assume the contracts described on **Exhibit A** pursuant to 11 U.S.C. § 365, and then to sell the Subject Lots free and clear of all liens, claims, encumbrances, and other interests pursuant to 11 U.S.C. § 363.

7. The proposed gross aggregate sale proceeds for the seven (7) Subject Lots is $685,920 as further detailed in **Exhibit A**.

8. In the sale of the Subject Lots, the Debtor expects to incur real estate commissions aggregating approximately $81,027, closing attorney's fees aggregating approximately $5,675, title insurance fees of approximately $1,253, and estimated recording fees of approximately $210. The Debtor's Motion seeks authority to distribute the closing attorney fees, the other closing costs, and the tax stamp costs to the proper parties at the closings of the

sales contracts. **Exhibit A** contains a detailed list of theses estimated expenses for each of the Subject Lots.

9. The $81,027 in commissions are proposed to be distributed as follows: $76,063 to Hampton Lake Realty, and $4,964 Marian Schaffer at Southeast Discovery.[2]

10. Closing of the sales of the Subject Lots are currently scheduled to occur on the dates shown on the attached **Exhibit A**. If the sales of the Subject Lots are further delayed, the Debtor fears that such delay may result in an unwillingness to close by purchasers.

11. Therefore, the Debtor requests a waiver of the fourteen (14) day stay required under Federal Rule of Bankruptcy Procedure 6004(h) relating to an order authorizing use, sale or lease of property because of the time-sensitive nature of the sales closings.

## **PROCEEDS OF THE SALE AND CLAIMS AGAINST THE ESTATE**

12. The Debtor's primary secured creditor, Sabal, alleges a secured claim in the approximate amount of $19,429,484.26.

13. HL Funding also alleges a second priority secured mortgage on the Debtor's real property in the approximate amount of $2,290,800.35.

14. The Debtor alleges that it has little or no priority debt except those items it is separately seeking to pay in its first day motions related to payroll and employee benefits.

15. The general unsecured debt is believed to be approximately $26,281,859.50, which is primarily comprised of loans and accrued interest owing to the Charter Note Holders of the Hampton Lake subdivision.

16. Pre-petition Sabal would receive 100% of the net sales proceeds remaining after payment of all commissions, attorney's fees, and other closing costs and after payment of the Debtor's management and operational expenses. From the sales described on **Exhibit A**, the Debtor proposes to give Sabal 90% of the net sales proceeds after payment of all commissions, attorney's fees, and other closing costs and after payment of the Debtor's management and operational expenses. From the sales on the attached **Exhibit A**, the Debtor proposes to pay Sabal approximately $327,184. Sabal disputes the Debtor's requests to pay management and operational expenses from its collateral, alleging that such payments are excessive and made to

---

[2] The Debtor has agreed that it will not distribute any commissions or incentives to Hampton Lake Realty, LLC on behalf of John P. ("Pratt") Reed, Jr. prior to receiving Court authorization to do so as part of the Court's consideration of the Debtor's use of cash collateral, a final hearing on which has been scheduled for May 20, 2013.

4

or for the benefit of insiders, and disputes the Debtor's ability to sell Sabal's collateral free and clear of its lien for this purpose.

17.  The Debtor further proposes to distribute commissions, attorneys fees, recording fees, and other necessary closing costs in the approximate amounts set forth herein and in accordance with the approved interim cash collateral budget in this matter. Any unused funds are to be held pending further order of the Court or confirmation of a Plan. Sabal's lien shall attach to the unused funds and Sabal reserves all rights and arguments as to such funds. In addition, Sabal reserves all rights as to the reasonableness of the amount of the commissions paid by the Debtor on future transactions.

## CONCLUSIONS OF LAW

In order to effectuate the sales, the Debtor's Motion seeks two forms of relief in regard to the Subject Lots. First, the Debtor is requesting approval of its assumption of the sales contracts at issue in the Motion. If sound business judgment supports the assumption of an executory contract, the Court should approve the proposed assumption. See Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc., 756 F.2d 1043 (4th Cir. 1985); In re Southco, Inc., Case No. 91-5576 (Bankr. D.S.C., Order entered January 22, 1992). In the present case, the Debtor is in the business of selling lots in the Hampton Lake Subdivision, and the closings of the sales on the Subject Lots will bring substantial value to the estate. As such, it appears that sound business judgment would indicate that the assumption of the sales contracts is warranted.

Second, the Debtor must obtain relief pursuant to Section 363. Section 363 of the Code authorizes the Debtor to sell property of the estate. Such property can be sold free and clear of any interest in the property. 11 U.S.C. 363(f). Sales of property under 11 U.S.C. §363(f) are limited to sales of property of the estate. In re Taylor, 198 B.R. 142, 158 (Bankr. D.S.C. 1996); In re Charles F. Hudson, d/b/a Hudson Metal Works, 94-73924-W (Bankr. D.S.C. January 10, 1997) (unpub). In re BHB Enterprises, LLC, dba Tycoon's Gallery of Games, 97-01975-W (Bankr. D.S.C. September 30, 1997) (unpub). In the present case, the Debtor owns the Assets. Sabal's consent to the sale of the lots as provided herein does not waive any of rights or defenses as to the Debtor's ability to sell lots free and clear of Sabal's lien in the absence of its consent.

To the extent necessary, the Debtor seeks the Court's authorization to sell the Subject Lots pursuant to 11 U.S.C. §363(b)(1), outside the ordinary course of business, prior to the filing of or a hearing on confirmation of its plan of reorganization. Although sales are usually

proposed and conducted pursuant to a plan of reorganization, this Court has recognized that when a sound business justification exists, the Court may authorize a sale pursuant to 11 U.S.C. §363(b)(1) without a confirmed plan of reorganization. In re Taylor, 198 B.R. at 156-57; see also Stephens Indus., Inc. v. McClung, 789 F.2d 386 (6th Cir. 1986); In re WBQ Partnership, 189 B.R. 97 (Bankr. E.D. Va. 1995).

Under the sound business purpose test, the Debtor has the burden of proving that:

    A.    sound business reason or emergency justifies a pre-confirmation sale;

    B.    the sale has been proposed in good faith;

    C.    adequate and reasonable notice of the sale has been provided to interested parties; and

    D.    the purchase price is fair and reasonable.

In re Taylor, 198 B.R. at 157.

### A. Sound Business Reason or Emergency

In the present case, both sound business reason and an emergency situation warrant sale of the Subject Lots prior to confirmation of a plan of reorganization. If the Debtor is required to wait until a plan is confirmed before it can sell the Subject Lots, the Debtor may lose these potential lot sales and its business and real property would be worth less. The Debtor runs the risk of losing various sales contracts. The Debtor may be incurring interest on all or some portion of more than $40,000,000 in loan balances and needs to pay those balances down as sales can be closed. The Debtor has asserted that the sales are in the best interest of the estate and constitute a reasonable exercise of its business judgment.

### B. Good Faith

The Debtor asserts the terms and conditions of the proposed sales are fair, reasonable and appropriate and were reached after arms-length negotiations. The Debtor has demonstrated that the Debtor and the various purchasers are proceeding in good faith. Therefore, the Debtor asserts that the various purchasers should be afforded the protections of Section 363(m) of the Bankruptcy Code.

### C. Notice

The Motion appears to have been served as directed by the Court in the Order setting the hearing in this matter. The Debtor made significant efforts to market its lots pre-petition, and the Debtor contracted to sell the Subject Lots pre-petition after significant marketing and advertisement to potential purchasers. The Debtor asserts that sales of the Subject Lots to the

various purchasers represent the highest and best offers the Debtor received after due advertisement to potential purchasers. Notice of the sales appears adequate and reasonable.

### D.   Purchase Price

The purchase prices to be paid by the various purchasers appear to be the highest or otherwise best offers that were received for the Subject Lots. The Debtor asserted to the Court that the purchase prices for the Subject Lots are reasonable and fair and currently represent the highest and best recoveries for the Debtor and its creditors on these Subject Lots, and the Purchase Price is equal to or exceeds the value of the Subject Lots and thereby the value of liens on the Subject Lots. The purchase prices appear to be fair and the proposed sales appear to be in the best interests of the estate and its creditors.

Based upon the foregoing findings of fact and conclusions of law, it is hereby:

**ORDERED** that:

1. The seven (7) sales contracts at issue in the Debtor's Motion are approved and the Debtor is hereby authorized to assume the seven (7) contracts outlined on **Exhibit A**; and

2. The Debtor is hereby authorized under Section 363(f) of the Bankruptcy Code to immediately sell and transfer the Subject Lots at issue to the respective purchasers for the agreed upon sales prices, and such sales and transfers to the respective purchasers or their assigns shall be free and clear of all liens, claims, encumbrances, and other interests; and

3. The respective purchasers are hereby deemed to be "good faith" purchasers within the meaning of Section 363(m) of the Bankruptcy Code and are entitled to the protections afforded by that section; and

4. The Debtor is hereby authorized to execute and deliver any documents, deeds, instruments and agreements as may be required to close the proposed Sales; and

5. The Debtor is authorized to distribute sales proceeds at closing as shown in the **Exhibit A** attached to this Order for the closing attorney fees, title insurance, recording fees, and other closing costs (except commissions); and

6. Pending further order, sales commissions may only be distributed by the Debtor in accordance with the interim order authorizing the Debtor's use of cash collateral in this matter.

7. Pending further order, distributions to Sabal from the Debtor's closings shall be in accordance with the interim order authorizing the Debtor's use of cash collateral in this matter.

8. Any sales proceeds remaining shall be held pending further order of the Court and

Sabal's lien shall attach to the remaining proceeds after payment of necessary closing costs.

9. The Court finds that the provisions of Federal Rule of Bankruptcy Procedure 6003(b) are inapplicable to these seven (7) sales in order to avoid immediate and irreparable harm and the automatic 14-day stay period set forth in Federal Rule of Bankruptcy Procedure 6004(h) is waived and shall not apply to this Order; and

10. **A Final Hearing to further consider the split of proceeds between the estate and Sabal from the sale of the Subject Lots shall be held at 10:00 a.m. on May 20, 2013 at the J. Bratton Davis United States Bankruptcy Court located at 1100 Laurel Street, Columbia, South Carolina 29201**.

AND IT IS SO ORDERED.

**EXHIBIT A**

**Hampton Lake, LLC**
as of 5/8/2013

| | | | | Lots under contract that have not closed | | | Estimated Closing Costs | | |
|---|---|---|---|---|---|---|---|---|---|
| View | Lot Size | Lot # | Buyer Name | Estimated Closing Date | Price | Commission | Attorney | Title Insurance | Recording Fees |
| Wooded | 80 | 501 | Hartl | 5/27/13 | $59,900 | $8,990 | $750 | $225 | $30 |
| Lake | 80 | 68 | Bourgard | 5/10/13 | $109,900 | $14,540 | $825 | $176 | $30 |
| Lake | 80 | 535 | Yahle | 5/10/13 | $129,900 | $14,717 | $875 | $215 | $30 |
| Wooded | 55 | 812 | Weekley | 5/17/13 | $57,510 | $2,875 | $750 | $86 | $30 |
| Lake | 80 | 261 | Alfieri | 5/21/13 | $114,900 | $16,220 | $875 | $209 | $30 |
| Lake | 100 | 732 | Kerrine | 5/16/13 | $159,900 | $20,990 | $850 | $256 | $30 |
| Wooded | 65 | 811 | Weekley | 5/17/13 | $53,910 | $2,696 | $750 | $86 | $30 |
| | | 7 | | **Gross Totals** | **$685,920** | **$81,027** | **$5,675** | **$1,253** | **$210** |